**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 29, 2019**

# In the Court of Appeals of Georgia

A19A1406. CITY OF ALBANY v. DOUGHERTY COUNTY.

COOMER, Judge.

As a threshold matter, this interlocutory appeal asks us to determine whether sovereign immunity bars Dougherty County's (the "County") cross-claim for indemnification against the City of Albany (the "City") arising out of an automobile accident involving a county-owned vehicle that was driven by an employee of the City. If this Court were to find that sovereign immunity is not a bar to the County's cross-claim against the City, we must then determine whether genuine fact issues exist as to the validity and applicability of the indemnification provision of an intergovernmental service agreement between the parties, and whether said provision requires the City to indemnify the County for the alleged negligence of a City employee who was acting pursuant to said agreement. On appeal, the City contends

the trial court erred by denying its motion to dismiss[1] a cross-claim for contractual indemnification filed by the County on the basis of sovereign immunity. The City further contends the trial court erred by concluding that genuine issues of material fact exist as to the validity of the indemnification provision of the intergovernmental service agreement between the parties. Lastly, the City contends the trial court erred in its factual findings regarding the employment status of a dismissed third party. For the reasons outlined in this opinion, we affirm.

On appeal, we review the trial court's summary judgment ruling de novo and "construe the evidence and all reasonable inferences therefrom in the light most favorable to [the County] as the nonmovant." *Hindmon v. Virgil's Food Mart, Inc.*, 252 Ga. App. 732, 732 (556 SE2d 135) (2001) (citation omitted). Summary judgment is appropriate only if no genuine issues of material fact remain concerning the County's claim. See *id*. at 732-733. So viewed, the record shows the City and County

---

[1] The trial court converted the City's motion to dismiss the County's cross-claim for contractual indemnification to a motion for summary judgment because the City had introduced evidence, including portions of deposition transcripts, discovery responses, and other exhibits. See *Weathers v. Dieniahmar Music, LLC*, 337 Ga. App. 816, 825 (4) (788 SE2d 852) (2016) ("Although a trial court has the option to consider evidence attached to a motion to dismiss and brief in support thereof, when the court does so it converts the motion to dismiss into a motion for summary judgment, governed by OCGA § 9-11-56." (citation and punctuation omitted)).

entered into an Intergovernmental Agreement ("IGA") on June 25, 2014, pursuant to the Service Delivery Strategy Act, OCGA § 36-70-20 et seq. As relevant to this appeal, the IGA was intended "to formalize their agreement for the City to furnish Code Enforcement Services within the confines of the unincorporated area of [the County.]"

The terms of the IGA provided in pertinent part:

The City shall use and employ one (1) individual who will be 100% dedicated to provide code enforcement services within the unincorporated area of [the County] in the same manner as provided to persons and properties within [the City]. *County will not be liable for any acts or omissions of such individual.* Each year, the County will budget and pay the actual expenses of the 100% dedicated City employee for the salary, benefits, supplies, uniforms, cell phone, computer, tablet with data service, code enforcement software, vehicle, fuel, maintenance of said vehicle, travel, training, etc. The County shall pay this on a monthly basis as invoiced by the City.

. . .

County agrees to be solely responsible for providing vehicle (as well as all expenses incurred in operation and maintenance of the vehicle); office furniture (including cell phone, supplies, etc.). In the alternative, County may request City to provide all or some of these expenses, County to promptly reimburse City for such expenses.

3

(Emphasis supplied).

On April 18, 2017, Daryl Driskell (the "Plaintiff") filed suit against the County, the City, and Melinda Gray, seeking damages for injuries he sustained in a July 2015 automobile collision when his vehicle was struck from behind by a County-owned vehicle driven by Gray. At the time of the accident, Gray, a Code Enforcement Officer, was employed by the City, but operating a vehicle owned and maintained by the County. The City and Gray filed a joint motion to dismiss. The County filed an answer to the Plaintiff's complaint in which it also filed a cross-claim seeking contractual indemnification against the City based on the terms of the IGA between the City and County. The City then moved to dismiss the County's cross-claim for contractual indemnification based on its assertion of sovereign immunity.

Following a hearing, the trial court granted Gray's motion to dismiss without prejudice after the Plaintiff's counsel conceded that Gray was not subject to a suit for damages stemming from the motor vehicle accident based on statutory immunity. See OCGA § 36-92-3 (a) ("Any local government officer or employee who commits a tort involving the use of a covered motor vehicle while in the performance of his or her official duties is not subject to lawsuit or liability therefor."). The trial court found from the evidence presented that Gray was acting in her capacity as an employee of

4

the City at the time of the accident, and that the City, therefore, should be substituted as the proper party defendant. See OCGA § 36-92-3 (b) ("In the event that the local government officer or employee is individually named for an act for which the local government entity is liable under this chapter, the local government entity for which the local government officer or employee was acting shall be substituted as the party defendant.").

The trial court also found that the ante-litem notice served on the City did not meet the requirements of OCGA § 36-33-5 (e) because the notice failed to include the specific amount of monetary damages being demanded against the City in the suit. As such, the trial court granted the City's motion to dismiss with prejudice the Plaintiff's claims against it, concluding that the Plaintiff's claims against the City were time-barred due to his failure to give timely and proper ante-litem notice.

The trial court then converted the City's motion to dismiss the County's cross-claim for contractual indemnification against it to a motion for summary judgment because the City had introduced evidence, including portions of deposition transcripts and a copy of the IGA. The trial court, in turn, denied the City's motion for summary judgment, finding that a genuine issue of material fact remained as to whether a viable indemnification clause exists within the IGA such that the City could be found

5

liable over the County should the Plaintiff obtain a judgment against the County. The trial court concluded, without citation to legal authority, that "the Doctrine of Sovereign Immunity applies to tort claims against the City but does not apply to contractual claims." Moreover, although the City relied on case law holding that a municipality is not authorized to enter into an indemnification agreement with a private third party, thereby waiving its sovereign immunity, the trial court highlighted that the instant case concerned the provisions of the IGA between two governmental entities. The trial court also noted that the County is not seeking indemnification from the City for the County's own negligence. Rather, the County is seeking indemnification for the alleged negligence of a City employee who was performing services in the County pursuant to the terms of the IGA. Therefore, the trial court concluded that "the exculpatory language in favor of the County does not violate public policy[.]" The trial court certified its order for immediate review and this Court granted the City's application for interlocutory appeal.

1. *Sovereign Immunity*. "The doctrine of sovereign immunity, also known as governmental immunity, protects all levels of governments from legal action unless they have waived their immunity from suit." *Watts v. City of Dillard*, 294 Ga. App. 861, 862 (1) (670 SE2d 442) (2008) (punctuation omitted). A waiver of sovereign

6

immunity requires a specific Act of the Georgia Assembly that provides for the waiver and its extent. *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 187 (674 SE2d 894) (2009). "Sovereign immunity is a threshold issue." *Watson v. Ga. Dept. of Corrections*, 285 Ga. App. 143, 144 (1) (645 SE2d 629) (2007) (punctuation omitted). "A motion to dismiss asserting sovereign immunity is based upon the trial court's lack of subject matter jurisdiction, rather than the merits of the plaintiff's claim." *Ambati v. Bd. of Regents of Univ. Sys. of Ga.*, 313 Ga. App. 282, 282 n.3 (721 SE2d 148) (2011) (citations omitted). Sovereign immunity is not an affirmative defense, and the party seeking to establish that it has been waived bears the burden of doing so. *Id*. Whether sovereign immunity has been waived is a question of law that this Court reviews de novo. *Ga. Dept. of Corrections v. Grady Mem. Hosp. Corp.*, 333 Ga. App. 315, 315 (775 SE2d 773) (2015).

Notwithstanding the above, the Supreme Court of Georgia recently concluded the following with respect to the applicability of sovereign immunity between two political subdivisions in which neither controls the court into which it was called or has governing authority over the other party with respect to the matter in dispute:

> As the doctrine of sovereign immunity is a principle derived from the very nature of sovereignty, it stands to reason that the doctrine would be

7

inapplicable to a lawsuit in which there is no sovereignty to protect. Put in the simplest of terms in this case, the County is not a sovereign over the City, and the City is not a sovereign over the County. Neither entity retains a superior authority over the other that would prevent it from being hailed into a court of law by the other.

*City of College Park v. Clayton County*, __ Ga. __ (830 SE2d 179) (2019). In light of existing case law, we find that the doctrine of sovereign immunity is not a bar to the current litigation between the City and the County, and the trial court did not err by denying the City's motion to dismiss the County's cross-claim for contractual indemnification.

2. *IGA Indemnification Provision.* The City contends the trial court erred by not finding the indemnification provision of the IGA ultra vires and void as an unauthorized attempt to waive the City's governmental immunity. We disagree.

As discussed in Division 1, the indemnification provision of the IGA at issue here is between two governmental entities, and sovereign immunity does not bar suit between the parties. Moreover, as the trial court found, the indemnification provision in the IGA between the City and County simply noted that the County could not be held liable for any acts or omissions of the City-employed code enforcement individual. We find nothing in the record or Georgia law that would suggest the City

8

was not authorized to enter into this agreement with the County. See *City of McDonough v. Campbell*, 289 Ga. 216, 218 (2) (710 SE2d 537) (2011) ("A city can, of course, bind itself by entering into a contract it is empowered to make under its charter." (citation omitted)).

In looking to the pertinent language of the IGA, we are reminded that "Georgia law requires us to give meaning to every term [of a contract] rather than construe any term as meaningless, and to construe a contract so as to uphold the contract in whole and in every part; and if construction is doubtful, that which goes most strongly against the party undertaking the obligation is generally to be preferred." *Myers v. Texaco Refining & Mktg., Inc.*, 205 Ga. App. 292, 296 (2) (422 SE2d 216) (1992) (citations and punctuation omitted). "In this State, the cardinal rule of contract construction is to ascertain the intention of the parties." *Alimenta (USA), Inc. v. Oil Seed S., LLC.*, 276 Ga. App. 62, 63 (622 SE2d 363) (2005) (citation and punctuation omitted).

> The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to

9

resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*Schwartz v. Harris Waste Mgmt. Grp., Inc*., 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999) (citation omitted). As noted by the trial court, there is no express provision requiring the City to reimburse the County for any damages incurred as a result of the negligent acts or omissions of its employee while assigned to serve as the code enforcement officer in the parts of the County covered by the IGA. It is not readily apparent based on the language of the IGA as to the extent to which the City is required to indemnify the County for the alleged negligent acts of the City employee in the operation of the county owned and maintained vehicle. Moreover, applying the rules of construction to this language does not bring us to a resolution of this matter. Thus, the issue of what the ambiguous exculpatory language means and what the parties intended must be resolved by a trier of fact.

3. The City contends the trial court erred in its factual findings concerning City-employee Gray because, according to the City, the findings improperly imply that Gray was not acting for the County at the time of the accident. We disagree.

10

In its order granting Gray's motion to dismiss, the trial court found that "Gray was acting in her capacity as an employee of [the City] at the time of the subject motor vehicle accident. . . . [The City], therefore, would be the proper party to be named as a defendant in light of [OCGA] § 36-92-3 (b)." The City contends that while it is "technically" true that Gray is an employee of the City, this finding by the trial court implies that Gray was not acting on behalf of the County at the time of the accident. However, the order dismissing Gray, "in which the trial court made factual findings based on disputed facts, does not finally determine issues of fact and law, [with respect to Gray's status at the time of the accident] nor does it decide any rights between [the City and the County]." *Nayyar v. Bhatia*, 348 Ga. App. 789, 793 (2) (824 SE2d 675) (2019) (citations omitted). "Simply put, the interlocutory factual findings made by the trial court in deciding whether to [dismiss Gray] have no bearing on any ultimate decision on the merits of [the lawsuit between the City and the County]." *Id*. "If the case proceeds to a jury, the parties will be free to present evidence that conflicts with the trial court's factual findings [regarding Gray's status at time of the accident], and the jury will be free to make its own factual findings supported by that evidence." *Nayyar*, 348 Ga. App. at 793-794 (2).

*Judgment affirmed. Doyle, P. J., and Markle, J., concur*.

11